IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| Paul F. Mammay | : | Case No. 21-20839-JAD |
| | : | |
| Debtor(s) | : | Chapter 13 |
| | : | |
| Paul F. Mammay | : | |
| | : | |
| Movant(s) | : | Related to Document 52, 55, 56 and 57 |
| | : | |
| vs. | : | Hearing Date: 7/6/22 at 10:00 a.m. |
| | : | |
| Ronda J. Winnecour, Chapter 13 Trustee | : | |
| | : | |
| Respondent(s) | : | |

### TRUSTEE'S BRIEF IN RESPONSE TO MEMORANDUM IN SUPPORT OF DEBTOR PAUL F. MAMMAY'S MOTION TO COMPEL CHAPTER 13 TRUSTEE TO RETURN FUNDS

Preliminary Statement

Trustee's expectation was that the Debtor's refund would have been delivered to the Debtor by the originally scheduled June 8, 2022, hearing date. See Trustee's Response at Doc 55 to Debtor's Motion to Compel. In fact, according to Trustee's records, the Debtor's refund check was issued in the May distribution, as the Trustee said it would, and was received and cashed by the Debtor on May 27, 2022. Accordingly, the Debtor was in possession of the refund as of the June 6, 2022, filing date of Debtor's Memorandum in Support.

Trustee disputes, as a matter of both law and fact, that there has been any violation of the Court Order. To the extent necessary, as a matter of fact, the Trustee was in substantial compliance with the Order.

Trustee disputes, as a matter of law and fact, Debtor's entitlement to any award of sanctions. Trustee asserts that the Debtor is not entitled to sanctions even if it is determined that there was a violation of the Order. As the check has already been

1

received and cashed, there is no coercive purpose for a sanction. There is no quantification of the fees or costs for which the Debtor claims reimbursement, but even if there was, Trustee disputes that the cause for the Debtor having incurred such fees or costs is the Trustee's violation of the Order. Rather, the cause of any loss is the result of the Debtor and his attorney's own neglect.

Statement of the Facts

Trustee incorporates and reiterates her HISTORY OF THE CASE as set forth at Paragraphs 3 through 14 of Trustee's Response (at Doc. 55).

Paragraph 14 of Trustee's Response summarized the contents of the Court Order at issue, that being the one that provided for the disposition of the Trustee's balance of funds on hand. The exact language of the Order, as it appears at Doc. 49 (hereinafter, the "Disposition Order"), is, for ready reference, as follows:

> Hearing held on Doc # 43 Motion for Order of Court Modifying April 8, 2021 Plan filed by Chapter 13 Trustee. The Bankruptcy case is to be dismissed without prejudice. The Trustee is permitted to pay allowed unsecured creditors, the Chapter 13 Trustees percentage fee, and Debtors counsels allowed fees from funds on hand. Any remaining funds are to be remitted to the Debtor. (RE: related document(s): 43 Motion for Order). (skoz) (Entered: 03/16/2022)

There was no document associated with this notation, i.e., it was a Text-Only Order.[1] The separate "Dismissal Order" was entered at Doc. 50.

As previously stated in Trustee's Response, at Paragraph 15, because the dismissal Order was processed too late in March to implement the distribution to

---

[1] Text orders are official and binding. See Local Rule 5005-11(c) ("Except as may be otherwise provided in the Federal Rules of Bankruptcy Procedure, orders may be issued as "text-only" entries on the docket, without an attached document. Such orders are official and binding.") The Debtor's own Memorandum in Support acknowledged that the Distribution Order at Doc. 49 was an official binding Order. See page 3 of the Memorandum in Support where the Debtor states: "The Debtor herein does not take issue with any of the distributions made in this case by the Chapter 13 Trustee. The Judge advised her to pay unsecured claims and return the remainder to the Debtor."

2

unsecured creditors that month, the distribution to unsecured creditors was not implemented until the Trustee's regular distribution date in April. The delay in the implementation of the Distribution Order, if it is perceived as such, was the result of the fact there were two separate orders to be implemented, i.e., a Distribution Order and a Dismissal Order. An additional factor was an appeal period that was yet to run as of the date of the March distribution.[2]

Debtor concedes, in his Memorandum in Support (at page 3), that the Trustee "completed the task of paying creditors relatively promptly." Debtor therefore concedes, or so it seems, that the delaying the first distribution to the April distribution date was proper. The issue would therefore seem to be whether the Trustee waiting the additional thirty days to distribute the Debtor's refund is a violation of the Distribution Order.

Significantly, the Distribution Order set no deadline or date by which the distributions were to be made. There was nothing in the Order that rendered it anything other than a direction to distribute in accordance with the Trustee's normal and ordinary case closing procedures and practices (i.e., an "Ordinary Course Case Closure Matter"). It was therefore treated as an Ordinary Course Case Closure Matter for purposes of implementation, rather than as an Order to be addressed on an emergency or expedited basis. The Trustee's staff processes a huge volume of orders every day that affect case distributions. Although every single Order is important, not every order needs to be, or practically speaking could be, implemented as an emergency or on an expedited basis outside the Trustee's normal procedures, including her case closing procedures.

---

[2] As reflected by the Debtor's collateral attack of the Distribution Order by his Motion for Turnover at Doc. 59, delaying the implementation of the Distribution Order until the appeal period had passed, and the Order had become final, was prescient.

3

The Trustee's system downloads daily all documents filed in Chapter 13 cases since the last download.[3] The downloaded documents are routed (and rerouted as appropriate) to members of the Chapter 13 staff for manual processing. It takes time to review and process each Order. The processing includes creating, closing, and changing payment records in the Trustee's system as necessitated by the terms of the Order.[4] If an Order is identified as one that is time sensitive (because the Order sets a deadline for its implementation), then it is moved to the head of the queue and given special attention. Where there is nothing in the Order that indicates that it is time sensitive, the order is processed in accordance with the Trustee's normal procedures.

In the instant case the Dismissal Order (at Doc. 50) was downloaded and automatically routed to a case administrator for processing. Consistent with internal practice, the Dismissal Order resulted in a "perm hold," being placed on the case, in effect an automatic lock, so there would be no "accidental" distributions pending further review of the case. By the time the "Distribution Order" was rerouted to the person who would "unlock" the case to implement it, the system had been closed off to further data entry for purposes of the March distribution and therefore too late to implement it for purposes of the March distribution. In addition, however, the 14-day appeal period had not yet run which would have been another reason to have held off until the April distribution.

---

[3] At the request of the Administrative Office, the Trustee does periodic downloads rather than receiving documents in "real time."

[4] For example, something as simple a trial loan modification order requires a number of steps for its processing. A case administrator needs to find the case and identify the correct creditor, create a new payment record for the trial modification payments and set the payment's level, and close off payment records for the creditor that are rendered moot by the trial modification. Lastly, everything that was done needs to have been documented. This needs to be repeated for each order (including confirmation orders) that is entered that creates, terminates, or otherwise affects a payment record.

The Trustee's ability to perform her functions under the budgetary constraints imposed by the U.S. Trustee requires a certain amount of standardization, uniformity, and consistency. One of the practices used by the Office to achieve standardization, uniformity, and consistency is the once-a-month distribution.[5] Each monthly distribution involves closing off the Trustee's accounting system to all data entry for several hours before the system begins printing the checks. Once the checks have been printed there is a certain amount of office mobilization needed to physically put the checks in envelopes and mail. All consumer bankruptcy attorneys in this District, including, presumably, Debtor's counsel, are familiar with the Office's once-a-month distribution practice.

As was explained in Paragraphs 15 and 16 of the Trustee's Response, the implementation of the Distribution Order was, given the pre-set guardrails in the Trustee's software, broken into two steps. The first was the distribution to the creditors that was, as per the timing as discussed above, implemented in the April distribution. The second was the refund to the Debtor that was implemented in the May distribution. Timing of the refund was therefore a function, in the ordinary course, of when the final distribution to creditors was made because the latter follows the former by one distribution. The guardrail is designed to prevent premature refunds by requiring that the case have been reviewed and be flagged as "closed" by an auditor (i.e., the auditor has determined that the case has, in fact, been completed in accordance with all applicable Orders of Court, including confirmation orders where applicable) before any refund in the case is issued. For Ordinary Course Case Closure Matters, the case will not be flagged as "closed" by an auditor until all payments to creditors have been made.

---

[5] The once-a-month distribution is believed to be the practice of every standing trustee in the country.

5

Trustee can override the Ordinary Course Case Closure procedures, including system guardrails, and prepare "manual" checks (i.e., prepare a check outside the normal distribution date), provided, however, overriding the guardrails and preparing the manual check is somewhat time intensive and burdensome, as well as disruptive as it diverts members of the staff from their regularly monthly duties.  Though burdensome and disruptive, the Trustee will override the procedures and guardrails and issue a manual check: (a) when necessitated by the specific and definite language of a Court order; or (b) where reasonably requested by a debtor or debtor counsel.

Every payment made by the Trustee is, to some degree, time sensitive. Everybody (creditors, debtors counsel, and debtors) wants their payment sooner rather than later. Trustee cannot possibility deviate from her procedures and override her guardrails in every case.  Absent a prompt that provides the Trustee fair warning that the Court expects her to deviate from her regular monthly distribution dates and case closing procedures, there is no reason for her to do so.  Accordingly, other than a prompt in the Court Order or by a reasonable request from Debtor's counsel, the Trustee does not deviate from her Ordinary Course Case Closure procedures.

In this case, there was nothing specific and definite in the Distribution Order that put the Trustee on notice that her Ordinary Course Case Closure Matter procedures and practices needed to be altered.

The Debtor did not question the status of the refund until May 10, 2022.  Trustee did not understand the inquiry as to status to be a request to deviate from the already scheduled May distribution, and even if it was subjectively intended by the Debtor to be such a request, the steps that would have been required to implement a special distribution were hardly warranted where the already scheduled May distribution was only two weeks away.

Discussion

Trustee complied with the terms of the Order

Proof of civil contempt requires the demonstration, by clear and convincing evidence, of three elements, those being that: (1) a valid order of court existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order. In re AGR Premier Consulting, Inc., 550 Fed. Appx. 115, 122 (3d Cir. 2014).

There is no dispute (at least by the Trustee) that the Distribution Order at Doc 49 constituted a valid Order of Court. The Trustee obviously had knowledge of that Order, and made the distributions provided for in the Order. The dispute is therefore whether the Trustee disobeyed the Order in following her Ordinary Course Case Closure procedures and practices in the implementation of the Order.

In evaluating a contempt motion, ambiguities in the record are to be resolved in favor of the party charged with contempt. Id at 116, n. 1 (citing FTC v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010) ("ambiguities must be resolved in favor of the party charged with contempt.")). Where the court discerns ambiguity, it must consider the facts from perspective of the party charged with contempt. Id. Specificity in the terms of the order is a predicate to a finding of contempt because "a person will not be held in contempt . . . unless the order has given him fair warning." Harris v. City of Philadelphia, 47 F.3d 1342, 1349 (3d Cir. 1995). Persons may not be placed at risk of contempt unless they have been given specific notice of the norm to which they must pattern their conduct. Id.

The notion that ambiguities and omissions redound to the benefit of the person charged with contempt follows from the long-standing salutary rules in contempt cases, one being that the order which is said to have been violated must be specific and definite. Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 544 (3d Cir. 1985). A

7

finding of contempt is improper if there are grounds to doubt the wrongfulness of the defendant's conduct. Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1994). "An order may be so vague or indefinite that, even though the alleged contemnor is chargeable with knowledge of such order, he cannot be punished for doing what he did in view of lack of certainty as to what it prohibited or directed." Holtzman, 775 F. 2d. at 544 (citing In re Rubin, 378 F.2d 104, 108 (3d Cir. 1967)).

Trustee made all the distributions in the Order according to the terms of the Order, including the Debtor refund. The Distribution Order set no deadline by which the refund was to be delivered to the Debtor. There was nothing in the Order that put the Trustee on notice that she was to deviate from her Ordinary Course Case Closure Matter distribution cycle(s) and practice and expedite the refund to the Debtor. Trustee's failure to expedite the refund cannot be said to have been a violation of the Order where the Order did not give her fair warning that such deviation was expected.

That the Debtor thinks, in retrospect, that the refund took too long is, under the standard, irrelevant. The standard requires that the Order be considered from the Trustee's perspective. That perspective includes well known and established distribution cycle(s) and practices which are followed unless there is something specific and definite that puts the Trustee on notice that she is to deviate from her normal procedure. The Trustee cannot be punished for proceeding as she did in this case.

<u>Trustee was in substantial compliance with the Order</u>

Apart from the question of whether all the elements of a civil contempt have been established, the Trustee is entitled to a defense if she substantially complied with the Order. FTC v. Lane Labs-USA, 624 F.3d at 591. "In order to avail oneself of the defense, a party must show that it (1) has taken all reasonable steps to comply with the valid

8

court order, and (2) has violated the order in a manner that is merely 'technical' or 'inadvertent.'" Id.⁶

The substantial compliance defense evokes a standard less demanding than a showing of impossibility. Id at 590. "A party substantially complies when it takes all reasonable steps to do so, but nonetheless contravenes the court order by good faith mistake or excusable oversight." Id at 591. The distinction between the impossibility defense and the substantial compliance defense is important, for a party that substantially complies need not prove that compliance was impossible, merely that it has erred in a manner for which it would be inequitable to impose contempt sanctions. Id.

The question of whether the accused contemnor was in substantial compliance is a factual question which, if there is to be a dispute, will require an evidentiary hearing. Id. However, given the language of the order in light of the Trustee's already pre-established and long standing Ordinary Course Case Closure procedures and practices, it would be inequitable to punish her for proceeding as she did and, therefore, a factual dispute still leads to the conclusion that a violation of the Order, assuming one is found, was technical or inadvertent.

<u>Debtor fails to state a case for sanctions or remedial relief</u>

Civil contempt sanctions are "remedial in nature," having two possible purposes: "to coerce compliance with a court order or to compensate the other party for losses sustained due to noncompliance." United States v. Pozsgai, 999 F.2d 719, 735 (3d Cir.

---

⁶ Although an accused contemnor's good faith is not itself a defense to the elements of civil contempt, good faith efforts to comply factor into the assessment of substantial compliance. FTC v. Lane Labs-USA, 624 F.3d at 591, n. 18. To put it another way, the correct standard for the substantial compliance is that "if a respondent has made in good faith all reasonable efforts to comply with a court order, technical or inadvertent violations of the order will not support a finding of contempt." Id at 591.

9

1993). Civil contempt sanctions may not be punitive, as punitive sanctions are appropriate only for criminal contempt. Id. Because the distribution of the refund has already occurred, a coercive sanction has no purpose. Id (later compliance with the order may purge the civil contempt sanction; sanctioning a party for past conduct is in the nature of criminal contempt).  See also In re Ransom, 599 B.R. 791, 821 (Bankr. W.D. Pa. 2019) (finding a coercive sanction inappropriate where there is evidence that the order at issue had been complied with).

On the question of the compensation of losses, the award must not "exceed the actual damages caused the offended party by a violation of the court's order." Quinter v. Volkswagen of Am., 676 F.2d 969, 975 (3d Cir. 1982). In other words, an award of damages requires a link, a "sufficiently specific nexus," between the alleged damages and the offending party's violation of the judicial order.  Apex Fountain Sales, Inc., 27 F.3d 931, 936 (3d Cir. 1994) (noting that district court in contempt action will undoubtedly "make particularized findings indicating specifically how the damages are actually linked to the contemptuous behavior it found").

It is, and will be, the Trustee's position that any losses suffered by the Debtor are the result, among other things, of plan payment defaults that resulted in post-petition mortgage payment arrears, Debtor's decision to seek dismissal of the case rather than allow the mortgage creditor to be brought current out of the lottery winnings already in the possession of the Trustee (which would have likely occurred in March but for the Dismissal Order), Debtor's neglect in failing to ask the Court to order the Trustee to deviate from her normal distribution cycle and expedite the refund, and Debtor's neglect in failing to informally ask the Trustee to expedite the refund (given her well known normal distribution cycles and once a month distribution dates).

Conclusion

10

There was nothing in the Distribution Order that gave the Trustee fair warning that she was expected to deviate from her Ordinary Course Case Closure Matter procedures and practices in its implementation, and, therefore, nothing to prompt her to have treated the Order any different from any other case closing distribution order entered by the Court. Debtor contends that the Trustee should have deviated from her regular practice, but there is nothing in the Order that expresses that in a specific and definite way. At most the Order was ambiguous as to the timing of the distribution and, therefore, needs to be considered from the perspective of the Trustee and her practices and procedures. Considering the Order from the Trustee's perspective precludes a finding of contempt.

To deviate from the ordinary distribution cycle and override the system guardrails is burdensome, but the Trustee will do so when required to do so. The Order in this case contained no such direction in anything that was reasonably specific and definite. There was nothing in the Order that gave the Trustee fair warning that if she did not issue the refund contemporaneously with the creditor distribution she would be in contempt of court.

There are substantial grounds, given the facts and circumstances of this case, to doubt that the Trustee was wrong in the way she implemented the Order. What is wrongful is the Debtor's attempt to penalize the Trustee for following her standard procedures and practices where he did nothing himself, until at least May 10, to bring to the Trustee's attention his belief that the Order required her to deviate from her procedures and practices.

Trustee did not violate the Distribution Order by following her normal distribution procedures and practices, and the Debtor's Motion must be denied.

                                                          RONDA J. WINNECOUR,
                                                          CHAPTER 13 TRUSTEE

Date:  June 20, 2022                    By: /s/ Owen W. Katz
                                                          Owen W. Katz, PA I.D. 36473
                                                           Attorney for Chapter 13 Trustee
                                                          US Steel Tower, Suite 3250
                                                          600 Grant Street
                                                          Pittsburgh, PA  15219
                                                          (412) 471-5566
                                                          Email: okatz@chapter13trusteewdpa.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | | |
| Paul F. Mammay | : | Case No. 21-20839-JAD |
| | : | |
| Debtor(s) | : | Chapter 13 |
| | : | |
| Paul F. Mammay | : | |
| | : | |
| Movant(s) | : | Related to Document 52 |
| | : | |
| vs. | : | Hearing Date: 6/8/22 at 10:00 a.m. |
| | : | |
| Ronda J. Winnecour, Chapter 13 Trustee | : | |
| | : | |
| Respondent(s) | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th of June 2022, I served one true and correct copy of the foregoing document on the following parties in interest by United States first-class mail, postage prepaid, addressed as follows:

Joseph S. Sisca, Esquire
Assistant U.S. Trustee
Suite 970, Liberty Center
1001 Liberty Avenue
Pittsburgh, PA  15222

Paul F. Mammay
162 East Wedgewood Drive
Pittsburgh, PA  15229

Dennis J. Spyra, Esquire
3265 Long Hollow Road
Elizabeth, PA 15037

/s/Rosa M. Richard
Office of Chapter 13 Trustee
US Steel Tower – Suite 3250
600 Grant Street
Pittsburgh, PA  15219
(412) 471-5566
cmecf@chapter13trusteewdpa.com